Thank you and good morning, Your Honors. Can everyone hear me? Yes. Thank you. I'd like to reserve three minutes for my rebuttal, please. Okay, mark your call. Thank you. May it please the Court. My name is Lisa Clay and I represent the appellant, Brian Kabala, who is the prevailing party in the underlying copyright litigation claim. Despite the status, the District Court not only categorically denied his request for fees under Section 505, but granted a belated special motion to dismiss, filed nearly 18 months into the litigation, and entered a $47,000 judgment against him. Kabala is seeking reversal of that judgment, reversal of the grant of LHF's special motion to dismiss, and remand for calculation of an appropriate fee award. As to the special motion to dismiss, Kabala focused his appeal on the second prong of the anti-flag analysis. Kabala met his burden of establishing a probability of prevailing on his abuse of process claim. Abuse of process in Nevada has two components. One, an ulterior purpose by the defendants, other than resolving a legal dispute. And two, a willful act in the use of the legal process, not proper in the regular conduct of the proceedings. The key to our appeal is that if the District Court was not satisfied with Kabala's showing in the second prong, it had an obligation pursuant to Nevada Revised Statute 41.660, subsection 4. And also, in line with this court's holding in Planned Parenthood, to allow Kabala to conduct limited discovery in order to address LHF's factual challenges. Planned Parenthood tells us that when an anti-slap challenge is to the legal sufficiency, the court applies the 12b6 standard, and addresses whether the claim is properly stated. But when an anti-slap challenges the factual sufficiency, the Rule 56 standard applies. And here's the important bit. And I'm quoting from Planned Parenthood. But in such a case, discovery must be allowed with opportunities to supplement evidence based on the factual challenges before any decision is made by the court. A contrary reading of these anti-slap provisions would lead to the stark collision of the state rules of procedure with the governing federal rules of civil procedure while in a District Court. If the court had any question at all about Kabala's evidence, it was obligated both under Nevada's anti-slap statute and this court's Planned Parenthood precedent to allow limited discovery. For these reasons, Appellant Kabala respectfully requests that the court reverse the District Court's dismissal or remand with direction to allow Kabala limited discovery. I'd like to spend a moment or two talking about the Fogarty analysis. Kabala was a successful litigant, not only because he obtained a dismissal with prejudice, but because unusually in this matter, there was a deemed admission that he had not infringed. The District Court's decision to award him nothing, zero in attorney's income was an abuse of discretion. The District Court's analysis in this case, I liken it to the absolute mirror image of the Turchin scenario. Your honors are all familiar with the analysis undertaken by the District Court in Turchin. In that case, the District Court demonized a BitTorrent plaintiff who was the winner and imputed all sorts of sins to the attorney, to other BitTorrent plaintiffs, not before the court, despite clear evidence on that record. And the most notable evidence and evidence that is suspiciously absent in this case, there was an admission of liability by Turchin, who was clearly the loser. Here, we have the opposite situation. Here, the District Court absolutely improperly focused its analysis on the unreasonableness of Kabala. Kabala won. Kabala's reasonableness isn't up for discussion. The court was obligated to view the unreasonableness of the loser. And the loser in this case was clearly, unequivocally, LHF. A couple of insults to injury, we'll call them, with regard to this unreasonable analysis. For reasons that aren't clear to me, the court decided to evaluate settlement discussions. And my position with regard to those settlement discussions is that they had no business in the record. They should have been protected under 408. They were placed in the record by LHF, not by Kabala. But yet, the District Court decided that it was appropriate to fault Kabala for not accepting that settlement offer. I was also a bit put off by the bloated docket analysis. The bloated docket and the blame for that bloated document, document, bloated docket, rests firmly on the shoulders of LHF. It is LHF and not Kabala who is responsible for causing this constant requests for extensions, multiple rules to show cause, several threats by the court to issue sanctions against both the lawyer and the party, and countless unsuccessful motions. The most striking of which are the five attempts that LHF made to unwind the clock with regard to the deemed admission. In other words, the District Court completely disregarded the unreasonableness of the party whose unreasonableness was supposed to be evaluated. That is the loser, LHF, period. A proper analysis of unreasonableness, as I mentioned, also would have focused on just what was in front of this court, just this docket. Instead, the District Court decided to make mention of prior experience with other BitTorrent plaintiffs. That evidence should have been completely disregarded. Furchin is very clear on that point. We are here in the fee petition component of this case to evaluate only what is before the court on this particular record that was not done here by this District Court. The other factor under Fogarty that the District Court chose to evaluate, and to be clear, we acknowledge that the District Court had some discretion in which of the factors it chose. There is no rule as to which factor, one over the other, the District Court must evaluate. But that evaluation, once the court chooses which factors it wishes to use, must comply with existing law. As to the goals of the Copyright Act, the District Court, again, chose to rely more on generalizations about its own experience with other BitTorrent plaintiffs. That, too, was error. Finally, the District Court's failure to analyze loser LHF's conduct was particularly problematic in this situation, where the loser's conduct is what added to the winner's attorney's fees. I referenced earlier my frustration with the bloated docket indictment. The bloated docket fits with LHF, not with Kabbalah. I see that I'm out of time. Let me conclude. The District Court's evaluation of the Fogarty factors was an abuse. Kabbalah is entitled to the fees that he requested, and we ask that the court reverse and remand for calculation of those prevailing party fees. Thank you. Thank you, Ms. Clay. Mr. Austin. You're on mute. Mr. Austin. Yeah, thank you. Good morning, Chris Austin on behalf of LHF. LHF is a special purpose entity, and it was created by Millennium Films for the production of London Has Fallen, which is one of the Has Fallen franchise films that stars Gerard Butler. The film was issued in 2016 and immediately subjected to widespread infringement via the Internet through a protocol known as the BitTorrent protocol. A president of LHF and also an executive with Millennium Films was deposed. His name is Mr. Jonathan Younger, and when he was deposed, he expressed that his concern was that he wanted to make sure that there was deterrent. It was clear in that deposition that LHF wasn't concerned so much about obtaining money necessarily. What they wanted was a system in which they didn't have to pay money in order to make sure that their movies were not infringed or there was a deterrent effect against that infringement. The record for Mr. Younger is excerpt of record 482 through 484. How do we get here? I mean, the problem is, is that we end up with these dope pleadings to go after infringers, and there's a history behind it. As is indicated in the case that I cited to in our brief, which is AF Holdings, which is a, I think it's a DC case. It kind of lays out the background for why we are in this position where you have plaintiffs, movie production companies having to file dope lawsuits in order to enforce their copyright infringement, and I'm assuming your honors are well aware of that history, but approximately 20 years ago, Congress tried to remedy this problem with the passage of the DMCA, the Digital Millennium Copyright Act, in which it provided for the directability for owners of copyrights to subpoena relatively the ISP holders of the individual entities that would, the Internet entities that would transmit this documentation. The Internet providers objected, and in a series of cases, ultimately culminating in the Verizon and the Enray Charter cases in the 8th Circuit and the DC Circuit, the court held that that subpoena power did not belong out of the DMCA and forced the copyright holders to then go into court and file a dope pleading and seek ex parte relief early on to identify who the infringing IP address belonged to. That's how we get here. Otherwise, there would have been a different process, one that would not have involved having to go through the court process. But until Congress changes that process or corrects the DMCA to permit for owners to directly go after the, to identify who the infringers are, the only way to do that is to file a lawsuit. And that's what happened here. That's what the dope pleading was, and when this action was brought, there are companies that specialize in identifying through the Internet, the ISP addresses that are engaging in the BitTorrent process and protocol, and thereby downloading illegal copies of a copyrighted work. So what information did you have beyond just the IP address to, in order to name Kabbalah? Very good, Your Honor. So, of course, at the very outset, there was no way we would have, we would know that because we had nothing but an IP address. So all we knew when we filed the initial pleading was that we had an IP address that had been identified as a BitTorrent infringer. Now, we had additional information that we could pull with regard to those IP addresses once we could identify who the individual was. So, I'm not sure if Your Honor is also questioning whether or not based on this court's ruling in the Nevada versus, I think, what is it? It's Kabbalah, Nevada, right. Kabbalah, Nevada versus Gonzales. What I understand was the holding in that case, and the D.C. Circuit recently addressed this same issue, that holding does not preclude, nor did the district court preclude, the early discovery to identify who the infringer was, but thereafter, when you filed the amended complaint, would require, quote, something more, right, to identify that this particular person was the infringing party. In this case, if the court will go, if you look at our excerpts of record, particularly, it is excerpt of record 479, there is an exhibit that was produced under the declaration of Benjamin Perino, who is the investigator, and it is identified as an additional evidence log. That additional evidence log lays out 80-something other works that were downloaded by the same ISP address. Those 80-something other works are of similar character, genre, and interest, and what's interesting is that Mr. Kabbalah has an Indian background, and several of those works are also of the same type of genre that would be interesting to potentially somebody of the same background. So those are the bases upon which we went forward. Additionally, there are some conversations and emails that took place between former counsel on this case and Mr. Kabbalah, which indicated he lived alone, he had a secured Internet server, and these things all, and in a single house, right? He didn't live, as was the case in the Gonzales case and the Nevada Culver case, this wasn't an open, unsecured forum where you have a lot of visitors coming in in an adult daycare and have the ability to download whatever is there. So I hope that answers Your Honor's questions. Well, did you or did you not rely on this PCAP data that was confused in the record? We did not. So what's called PCAP data, we believed, the former counsel believed that PCAP data had also been collected in the context of this case because that process had been instituted as an additional forensic process at around the same time. When I came on board with the case and started to really try to respond to some of the discovery requests after initial efforts to try and get this dismissed were not immediately granted, so we were waiting for courts to rule on them, I learned in that process that no PCAP data had been employed for this particular case, that the infringement detection system that was employed was the same infringement detection system that had been employed for years and years prior. So what I don't understand is what happened? These requests for omissions were just inadvertently not answered? I mean, that seems pretty bad. I mean, I understand why Cabala thinks he's entitled to attorney's fees, but he did become the prevailing party on a technicality. But seriously, that's pretty poor lawyering, wouldn't you say? I wholly agree. And I wish I had a good answer to that question. I wasn't the lawyer. So I came in and tried to get it withdrawn, and the court refused. I felt like I had to go through that effort and do it. It appears to me that prior counsel simply overlooked it. I don't know if his docket was big. I'm not going to provide excuses for him. I don't. I came in to try and move forward from that position and go forward. But, yeah, I leave that to the client, what they want to do with former counsel. That's not in my bailiwick. I wholly agree with your Honor's assessment. It is a tremendous error, in my opinion. Nonetheless, it's not dispositive of whether or not LHF brought this action in good faith. It did. There was clear forensic evidence based on a longstanding process, the same process that has been used for years by Stephen Bunting, who is one of our named experts, who has testified. If I could just jump in on that just for one second. Go ahead. I may be with you on the idea that this started in good faith, but it looks to me like there came a point where whoever the prior lawyer was realized maybe things weren't panning out. And at that point, you know, that lawyer just shut down answering discovery, didn't respond to anything, and basically treated the case as done without actually letting Kabbalah off the hook. So, you know, it looks to me like maybe things were fine at the starting gate, but by a couple laps around the track, it didn't look good for LHF, and they didn't really do the right thing. And this is what bothers me. They should have stepped up at that point and said, look, we just can't prove this thing. And it looks to me, and from what the district judge said, they kind of let it go on and on and on by just dropping off the face of the map, the earth. So why isn't that enough to kind of kick this to the situation where the discretion to address bad behavior might weigh in Kabbalah's favor in terms of awarding fees? Good question, Honor. I don't believe that that's the accurate representation of what took place. The case early on, right after the request for the deemed omissions went through, my review of the record coming in showed that there was an immediate effort to try and resolve and settle the case by dismissing all of LHF's claims, which is what happened with prior counsel. I wasn't the one that made that initial dismissal. And then also offering to pay Kabbalah all of his expenses and costs to that point in time. And there were further communications. I'll refer you to the record because there is an email correspondence between prior counsel and Mr. Kabbalah that lays out the efforts that prior counsel had in trying to get this thing settled and do the right thing, and he just got continued pushback from Mr. Kabbalah. It's excerpt of records 619 through 623. So, you know, I'm not involved in that point. When I came in, one of the first things we did was jump in to try and deal with the discovery issues. But we also, of course, then filed the anti-SLAPP motion to try and get the case dismissed because we had already dismissed our claims. And then we moved to dismiss our claims with prejudice to try and resolve and get this case done. That was the intent of our going forward. But to your point, there was a, you know, obviously, once there's a deemed admission, there's no point in going forward and trying to assert your own claims. And there weren't. By that point in time, LHF no longer had any claims. In fact, as I understand from the record, prior counsel actually dismissed LHF's claims before the deemed admission was discovered or ruled on. So there had already been an effort to extricate the client from this case by that point in time. I hope I've addressed your questions. Is there any other questions that you have? If not, the one thing I'm going to kind of conclude with is the thing that the court found was that there was nothing ever produced by Kabbalah that would show either an ulterior purpose or that this was something that was collateral to the actual process itself. Kabbalah's entire case relies on whether or not LHF had a case. The district court found definitively that LHF met its burden to show that it had a good faith basis for bringing the case, and it had evidence there sufficient to go forward. We believe that that is enough to overrule. That ends the whole inquiry because once you have got a good faith basis to go forward, there can't be an ulterior purpose. Additionally, we ask the court to rely or to look to litigation privilege, which we believe is a very powerful explanation for which this case should be upheld. Is there a cross appeal of the SLAP fees awarded to LHF? No. I guess one last question has to do with the manual in terms of whether or not there was an ulterior motive at the beginning. I have a quote from the APMC manual. It says APMC, which was that your investigator or not? APMC? Looks for potential infringers and then, quote, selects individuals who are wealthy and likely to settle and put those in an individual lawsuit. Yes, that's not what we do. Okay, so you have nothing to do with the APMC manual that's in the record? No. My client is London Has Fallen. The investigating contractor that was hired by London Has Fallen to go forward to do this was MEU, which is Maverick Eye, and then it is also one of the investigators is Ben Perino, who works with a company called Guadalay. Those are the entities that are involved. All right. How did this APMC manual end up in the record? Can you tell me what? Anti-piracy management company. Yeah, that's not my company. I don't believe we put that in the record. I don't know. The record was initially prepared by appellant, and then for the most part, if there was something else we thought we needed to be added, we provided that to them. They included it in the joint. So I'm assuming that was something prepared by appellant and put in the record. We didn't challenge anything they put in. We let them put anything they wanted to put in. All right. Thank you, counsel. You're over your time. I'll give you a minute, Ms. Clay. Thank you, Your Honor. Let me address very directly your APMC question. I will have to respectfully disagree with my colleague's assessment of APMC's involvement in this matter. The allegations of our abusive process counterclaim are based on the fact that LHF is not the real party in interest. The real party in interest is, in fact, and the name changes. At the time the APMC manual was created, that was the name of Benjamin Perino's entity. It has since morphed into Gardelais, into Navragi, into all sorts of different iterations. But our position and the basis of our abusive process claims is that APMC, or whatever name it is calling itself at any given time, is the actual party. That party goes to movie studios and says, we can find you extortion targets. Would you like us to do that for you? And the movie companies say, sure. And this addresses another point that Mr. Austin made, which is an allegation that this isn't about getting money from these defendants. He has a remedy. His clients, if they are concerned about their copyrights, they can send takedown notices. There are lots of remedies they have, short of filing ex parte discovery requests and seeking the identity of people that don't have the benefit of the court system until they're named in a lawsuit. So you've used up your time. Thank you and clarified APMC. LHF Productions v. Kabbalah will be submitted. And our next case is Pediatric and Family Medical Foundation v. Azar.
judges: Wardlaw, Gould, Donato